IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

DUSTIN SIAU     PLAINTIFF

v.     Civil No. 6:17-CV-06118

CORPORAL SIMMONS and     DEFENDANTS
CORPORAL DYER

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights action provisionally filed pursuant to 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2011), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

Currently before the Court is Defendants' Motion for Summary Judgment. (ECF Nos. 25, 26, 27).

### BACKGROUND

Plaintiff filed his Complaint on November 17, 2017. (ECF No. 1). He alleges his constitutional rights were violated while he was incarcerated in the Arkansas Department of Correction ("ADC"), Ouachita River Unit. Plaintiff was ordered to file amended complaints twice, and he did so on November 30, 2017 and December 6, 2017. (ECF Nos. 7, 9). Pursuant to the screening requirements of the Prison Litigation Reform Act, Plaintiff's official capacity claims against all Defendants were dismissed on February 21, 2018. (ECF No. 12).

Plaintiff suffered a head injury requiring five staples while being cuffed and escorted from his cell on April 3, 2017. (ECF No. 1). In his Second Amended Complaint he characterized the alleged incident as use of excessive force, cruel and unusual punishment, and deliberate

1

indifference to care of inmates. (ECF No. 9 at 4). In his deposition, Plaintiff admits that the injury may have been accidental. (ECF No. 25-14 at 13).

Defendants filed their Motion for Summary Judgment on September 24, 2018. (ECF Nos. 25, 26, 27). On September 25, 2018, the Court entered an Order directing Plaintiff to file his Response to the Summary Judgement Motion by October 16, 2018. (ECF No. 28). To date, Plaintiff has not filed his response and has not otherwise communicated with the Court.

In the Order directing him to Respond to the Summary Judgment Motion (ECF No. 28), Plaintiff was advised that failure to comply with the Court's Order would result in: (a) all of the facts set forth by the Defendants in the summary judgment papers being deemed admitted by Plaintiff, pursuant to Local Rule 56.1(c), and (b) shall subject this case to dismissal, without prejudice, pursuant to Local Rule 5.5(c)(2).

The Court must consider the facts set forth in Plaintiff's verified Complaint in ruling on the Summary Judgment Motion. A verified complaint is the equivalent of an affidavit for summary judgment purposes. *See, e.g., Roberson v. Hayti Police Dep't.*, 241 F.3d 992, 994-95 (8th Cir. 2001).

As the Court in *Roberson* pointed out, "[a]lthough a party may not generally rest on his pleadings to create a fact issue sufficient to survive summary judgment, the facts alleged in a verified complaint need not be repeated in a responsive affidavit to survive the summary judgment motion." *Id.* The Court will "piece[] together [Plaintiff's] version of the facts from the verified complaint. . . ." *McClanahan v. Young*, No. 4:13-cv-04140, 2016 WL 520983, *1 (D.S.D. Feb. 5, 2016). Those portions of the Defendants' statement of material facts that do not conflict with [Plaintiff's verified complaint] are deemed admitted." (*Id.*).

## LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "Conclusory, non-specific statements in an affidavit or verified complaint" are also insufficient. *McLanahan*, 2016 WL 520983, at *6 (citing *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

In this case, the facts set forth by the Defendants are deemed admitted except to the extent contradicted by the verified complaint. The question is, given the facts as pieced together by the Court, whether genuine issues of material fact exist as to whether Plaintiff's constitutional rights were violated.

## ANALYSIS

Defendants argue that Plaintiff failed to exhaust all administrative remedies available to him by failing to follow the prison's grievance procedure process.[1] (ECF No. 27 at 1). They provided an affidavit from the ADC Grievance Supervisor stating that Plaintiff did not exhaust his remedies about the alleged occurrence on April 3, 2017, against either Defendant, prior to the commencement of this case. (ECF No. 25-2 at 2-3). She states the informal grievance filed by the Plaintiff was rejected at the unit level because it was untimely,[2] not based on the merits. *Id*. Plaintiff then filed his first formal grievance,[3] which was rejected as untimely, and an appeal.[4] (ECF No. 25-3). Plaintiff filed a second formal grievance before filing his complaint with this Court on November 17, 2017.[5] (ECF No. 25-4 at 1).

Plaintiff did not respond to the Defendants' Motion for Summary Judgement. In his First Amended Complaint[6] Plaintiff included an affidavit attached to grievance OR-17-00815 which stated he was prevented from filing a timely grievance because the officers he asked for forms did not provide them. He further stated in the affidavit that Warden Faust told him on May 26, 2017, that if his grievance came back untimely he had exhausted his grievance. (ECF No. 25-3 at 2).

---

[1] The ADC Administrative Directive (AD) 14-16 outlines the 3 steps an inmate must take to properly exhaust his available remedies. First, the informal grievance needs to be filed within fifteen days of the alleged occurrence. Second, if no response is received within three days, an inmate has three days to file a formal grievance. Lastly, an inmate must appeal any unfavorable decision within five working days of receiving the response. Once an inmate has completed all three steps and abided by the deadlines and procedure in AD 14-16, he has exhausted all available remedies.

[2] The Plaintiff filed his informal grievance on May 11, 2017, thirty-eight days after the alleged occurrence and outside of the requisite fifteen-day time period as set out in the prison's grievance process.

[3] Step Two of #OR-17-00815 was filed on May 19, 2017 and was rejected as untimely.

[4] Plaintiff appealed the rejection on July 13, 2017 and his appeal was rejected at the unit level for being untimely on July 18, 2017, because the initial filing was untimely. (ECF No. 25-3 at 3).

[5] Plaintiff filed #OR-17-09126 on November 13, 2017. Plaintiff states that he was waiting on the investigation of his claim before filing step two. However, Plaintiff signed and dated a response on May 19, 2017 stating that while investigation was in progress, he should move onto step two. (ECF No. 25-4 at 1). This grievance will therefore not be discussed further.

[6] Plaintiff was clearly advised in the Orders directing him to Amend that an Amended Complaint supersedes all prior Complaints. It is therefore not clear that these allegations are properly before the Court. Because deposition testimony concerning the allegations was provided and Defendants addressed his allegations in their brief, however, the Court will address the allegations.

Plaintiff repeated these allegations in his deposition and provided further detail. He testified that he asked three officers for a grievance form while he was in punitive isolation after the incident on April 3, 2017. One officer told him he could not have one in behavior control, while the other two told him they would bring one when they had a chance. (ECF No. 25-14 at 17-18). When he got the "same story" after the third request he "gave up," "stopped asking," and decided to wait until he got back to general population to get a form "out of his property." (ECF No. 25-14 at 17-18, 21).

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (internal quotation marks and citation omitted). The "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*. A prisoner's remedies are exhausted "when [the] inmate pursues the prison grievance process to its final stage and receives an adverse decision on the merits." *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012). The purpose of the exhaustion requirement is to "give the agency a fair and full opportunity to adjudicate their claims." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). "Proper exhaustion demands compliance with an agency's deadlines." *Id*.

The Eighth Circuit Court of Appeals, however, has recognized two exceptions to the PLRA exhaustion requirement: (1) when officials have prevented prisoners from utilizing the grievance procedures; or, (2) when the officials themselves fail to comply with the grievance procedures. *See Gibson v. Weber,* 431 F.3d 339, 341 (8th Cir. 2005) (citing *Miller v. Norris*, 347 F.3d 736 (8th Cir. 2001) (explaining that a prisoner is only required to exhaust those administrative remedies that are available and any remedies that prison officials prevent a prisoner from utilizing are not considered available)). A remedy is unavailable if officers are "consistently unwilling to provide any relief to aggrieved inmates." *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016) (citing *Booth v. Churner*, 532 U.S. 731, 738 (2001)). A remedy is also considered unavailable when prison administrators "thwart inmates . . . through machination, misrepresentation, or intimidation." *Id*. at 1860 (citing *Woodford* at 102, 126). Any evidence of a problem in the grievance system must be "specific enough to show that prison officials had prevented [inmate] from administratively exhausting." *Boyles v. Park*, 111 F. App'x 861 (2004).

It is not Plaintiff's subjective belief regarding whether he had any administrative remedies remaining that should be considered, but whether any administrative remedies were in fact available. *Lyon v. Vande Krol*, 305 F.3d 806, 809 (8th Cir. 2002). In *Gibson v. Weber,* 431 F.3d 339 (8th Cir. 2005), the inmates alleged unnamed prison and healthcare personnel told them all complaints concerning medical care should be made verbally instead of through the prison's grievance procedure. *Id*. at 341. The inmates argued that these instructions, combined with past success in voicing their medical complaints verbally, made it reasonable for them to believe that the grievance procedure was not available to them, therefore excusing them from the PLRA exhaustion requirements. *Id*. The *Gibson* court did not adopt the inmates' reasoning. Instead, the *Gibson* court held that the inmates were not excused from properly exhausting their administrative

remedies because they failed to show any prison official "thwarted an attempt to initiate the procedures or that any official made it impossible for them to file grievances." *Id*. The Court further noted that the inmates admitted they had received a copy of the Inmate Living Guide which explained the grievance procedure and "its application to all aspects of inmate life." *Id*.

Similarly, in *Porter v. Sturm*, 781 F.3d 448, 452 (8th Cir. 2015), the inmate was aware of the deadline for filing an appeal and "freely chose not to pursue the final stage after he received his resolution." The inmate argued that was excused from exhausting his remedies because prison officials withheld grievance procedures. He did not allege that he tried to appeal, that prison officials told him he was not allowed to appeal, or that they prevented him from appealing. *Id*. The *Porter* court held, despite an unjustified delay of response from prison officials, the inmate was not prevented from utilizing grievance procedures, and needed to file an appeal even if he believed that an appeal would be ineffective. *Id*. Consequently, the officials' noncompliance "did not cause remedies to be unavailable." *Id*.

In contrast, if a prison refuses to supply grievance forms after multiple written requests, the inference is raised that the procedure may be unavailable. *Miller v. Norris*, 247 F.3d 736, 738 (8th Cir. 2001). In *Miller*, the inmate had been transferred from the ADC to a federal prison. Both he and his mother sent multiple written requests by certified mail to the ADC requesting grievance forms. The ADC failed to respond. The Eighth Circuit held that the allegations were sufficient to raise an inference that the inmate had exhausted his available remedies. *Id*. at 740.

Here, there is no dispute that Plaintiff's grievance OR-17-00815 was filed untimely and nothing in Plaintiff's verified Second Amended Complaint contradicts Defendants' assertion that he failed to exhaust his administrative remedies. Further, none of Plaintiff's alleged excuses, as

7

set forth in his affidavit attached to his First Amended Complaint, fit into the exceptions recognized by the Eighth Circuit.

Plaintiff first states in his affidavit that the warden misled him by telling him that rejection of a grievance for being untimely constituted exhaustion of all available remedies. (ECF No. 25-3 at 2). However, Plaintiff's allegation that the warden misled him is based on a statement made well after his untimely filing of OR-17-00815 on May 11, 2017. (ECF No. 25-3 at 1). According to Plaintiff's affidavit, he spoke to Warden Faust on May 26, 2017. (ECF No. 25-3 at 2). Thus, even if true, the warden's alleged statement did not cause Plaintiff to file his grievance untimely on May 11, 2017.

Plaintiff next states in his affidavit that the informal grievance was unavailable to him because prison officials repeatedly ignored his requests for grievance forms, preventing him from utilizing the grievance process. (ECF No. 9). In his deposition, Plaintiff alleges he first asked for a grievance form from an officer on April 3, 2017, the day he was placed in behavior control housing. That officer told him he did not have a form with him, and even if he did, he would not be permitted to have one because he was on behavior control. (ECF No. 25-14 at 17). Two days later (April 5, 2017), while still in behavior control, he asked another officer for a grievance form. This officer told him they did not have a form with them but would bring him one when "they got the time." (ECF No. 25-14 at 18). Plaintiff was then released from behavior control that same day but remained in isolation/restrictive housing. On April 11, 2017, one day after his appearance in the ADC Disciplinary Court, Plaintiff asked a third time. The third officer again told him they did not have any with them but would bring him one. (ECF No. 25-14 at 18-21). Plaintiff believed he had until April 12, 2017, to file his grievance, but the fifteen-day deadline to file was actually April 18, 2017. (ECF No. 25-14 at 21).

Plaintiff admitted that he only made these three requests to officers within the fifteen-day period. *Id*. When he got the "same story" after the third request he "gave up," "stopped asking," and decided to wait until he got back to general population to get a form "out of his property." (ECF No. 25-14 at 17-18, 21). Plaintiff testified there were four officers covering the day and night shifts in isolation, and other officers would be rotated in depending on the days. (ECF No. 25-14 at 15-16). Plaintiff testified he did not ask any other officers for grievance forms. (ECF No. 25-14 at 21). Plaintiff was not able to identify the three officers he asked for forms. (ECF No. 25-14 at 17).

Defendants provided affidavits and copies of ADC Administrative Directive 14-16, indicating that there are multiple ways for an inmate to get a grievance form, and Plaintiff was not prevented from utilizing these, even if the three officers did not comply with his requests. (ECF No. 27 at 8). According to AD 14-16, grievance forms shall be readily available to any inmate in any housing area. All inmates are entitled to use the grievance process regardless of "security status, custody level, job classification, disciplinary status, or any administrative/judicial decision affecting the inmate." (ECF No. 25-1 at 4).

Warden Faust states in his affidavit that grievance forms are available in all inmate living areas including restrictive housing. (ECF No. 25-9 at 2). If an inmate requests a form, the officer will give him one, or bring one at the end of his or her shift if they do not have one at the time of the request. (ECF No. 25-9 at 1-2). The Deputy Warden, Chief of Security, Captain, and Lieutenant all make daily rounds through isolation, and an inmate can request a grievance form from any of theses individuals. (ECF No. 25-9 at 2). Nurses, accompanied by security staff, conduct pill call three times a day in isolation/restrictive housing, and an inmate may request a grievance form from the security staff. (ECF No. 25-9 at 2). Mental Health employees conduct

9

daily rounds in isolation/restrictive housing, and an inmate can request grievance forms from these employees. (ECF No. 25-9 at 2). Inmates can also request grievance forms from staff at mealtimes and from any staff member in the unit. (ECF No. 25-9 at 2-3). Plaintiff did not request a grievance form from Warden Faust. (ECF No. 25-9 at 3).

Defendants also provided affidavits from three inmates stating they have never been denied a grievance form. (ECF No. 25-5, 25-6, 25-7). They also provided the signed copy of Plaintiff's inmate orientation form dated September 8, 2015. (ECF No. 25-8). This form states that:

> On the date indicate[d] I have received a thorough orientation into this institution's procedures, rules, services and processes and I was given an opportunity for input and to ask questions. I also received an Orientation Manual.

(ECF No. 25-8). This orientation includes a copy of the inmate Grievance Procedure. (ECF No. 27 at 8).

Thus, Defendants have provided evidence that Plaintiff had a multitude of opportunities to ask for a grievance form in the fifteen days after the incident on April 3, 2017. These opportunities included his appearance at the ADC Disciplinary Court. Nothing in Plaintiff's affidavit or deposition contradicts this evidence. Instead, being fully aware of the fifteen-day deadline, Plaintiff freely chose to stop asking for forms and wait until he could retrieve them from his personal property when he was returned to general population. This is distinguishable from the inmate in *Miller*, who, along with his mother, made a concerted and documented effort to receive a grievance form. Plaintiff attributes his decision to his subjective belief that, after he asked three times and got the "same story," he was not going to receive a form. He does not allege, however, that any ADC employee other than the first officer he asked on April 3, 2017, told him he could not have a form or could not pursue the grievance process while in isolation/restrictive housing. His subjective belief is also contradicted by the clear language of the ADC Administrative

Directive governing grievance policies, which Plaintiff verified he received on September 8, 2015. This is much like the situation in *Gibson*, where the inmate's subjective beliefs concerning the grievance process were contradicted by the facility's written policy.

Thus, nothing in Plaintiff's affidavit raises the inference that anyone at the ADC deliberately thwarted his attempt to initiate proceedings or that the grievance process was in any way unavailable to him.

Defendants' Statements of Fact regarding Plaintiff's failure to exhaust his administrative remedies are therefore deemed admitted, there is no genuine issue of material fact, and Defendants are entitled to summary judgment in their favor.

## CONCLUSION

Accordingly, it is recommended that Defendant's Motion for Summary Judgment (ECF No. 25) be GRANTED and Plaintiff's case be DISMISSED WITH PREJUDICE.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 17th day of June 2019.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE